[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiffs Miguel A. Castillo (hereinafter "Castillo") and Bruce R. Snyder (hereinafter "Snyder") and defendant Luis C. Amaral (hereinafter CT Page 5988 "Amaral") were the sole partners of a partnership known as Lead Pack Sports, Ltd., a retail sporting good establishment. Castillo owned a 44% interest in the partnership; Snyder a 33% interest; and Amaral a 22% interest.
During the ordinary course of partnership business the parties negotiated three loans from Connecticut National Bank and executed promissory notes as partners of Lead Pack and individual personal guarantees; the first on December 5, 1985 in the amount of $30,000.00; the second on February 13, 1986 in the amount of $20,000.00; and the third on March 7, 1986 in the amount of $15,000.00.
On November 6, 1987 the plaintiff, Bruce R. Snyder, by letter addressed to John Shearman, attorney for the plaintiffs, advised that he approved-of the purchase of the defendant's shares by Anthony Spak. On November 15, 1987 the incorporation papers for Lead Pack Sports, Ltd. were filed with the Secretary of the State of Connecticut with Anthony J. Spak, III as an incorporator, director and secretary of the corporation. On February 22, 1988 Mr. Spak executed a personal guarantee in favor of CNB for the Lead Pack obligations, and on January 20, 1989 he executed an assumption agreement as to the three notes in favor of the defendant. No claim has been made that any plaintiff ever executed any release in favor of the defendant, and no offer of any such document has been made.
On or about May 24, 1989 Connecticut National Bank made demand upon the parties for payment of amounts due pursuant to the Commercial Promissory Note and the joint and severable personal guarantees of the parties. On or about July 3, 1989 an ex parte order of attachment was issued in the Judicial District of Fairfield at Bridgeport, in the amount of $60,000.00 in favor of Connecticut National Bank, attaching the real property of Mr. and Mrs. Castillo located at 6 November Trail, Weston. On September 29, 1989 the plaintiffs paid the sum of $14,132.76 to Connecticut National Bank, attorney fees and costs of $9,795.00, and executed a promissory note to Connecticut National Bank in the principal amount of $48,762.66, which note was secured by a blanket mortgage on the Castillo's home and Snyder's condominium located at 85 Highland Road, Stamford. From September 29, 1989 until February 28, 1993 the plaintiffs have jointly paid interest on said note to Connecticut National Bank in the amount of $10,620.80.
The total paid out by the plaintiffs in interest, attorney fees and costs to date, together with the principal amount of the new note, is in the amount of $83,311.24. The defendant's 22% share of said amount is $18,328.48.
The plaintiffs contend that the defendant is liable for his 22 CT Page 5989 percent share of the obligation to CNB under two separate theories of law, common law contribution and partnership law.
Generally, all partners are jointly liable for debts and obligations of the partnership. See General Statutes 34-53.
 The dissolution of partnerships, however, is governed by a number of provisions in the Uniform Partnership Act, General Statutes 34-39 et seq., General Statutes 34-74, entitled Discharge From Partnership Liability, provides in subsection (1) that "dissolution of a partnership does not of itself discharge the existing liability of any partner." However, subsection (3) goes on the state: "Where a person agrees to assume the existing obligations of a dissolved partnership, the partners whose obligations have been assumed shall be discharged from any liability to any creditor of the partnership who, knowing of the agreement, consents to a material alteration in the nature or time of payment of such obligations." General Statutes 34-74. The language of 34-74 (3) fits most aptly the situation in which (1) all of the obligations of the partnership are assumed by the remaining partner; and (2) all of the assumed obligations are in the form of obligations to pay. In such circumstances, the statute discharges the withdrawing partner, as surety whenever the creditor and the remaining partner, as principal, agree to a material variation in the assumed debts by an alteration in the nature or manner of payment of those debts. See Crone 
Bromberg Partnership pp. 451-52 (1968). Additionally, courts in their analysis of this language in the Uniform Partnership Act, have described the relationship of the assuming partner to the withdrawing partner as the relationship of principal to surety, and have bound creditors to knowledge of the legal consequences of such a relationship if they knew of the assumption agreement. Munn v. Scalera, 181 Conn. 527, 530, A.2d (1980). See also, Strikeman v. Whitman, Requardt Smith, 272 App.Div. 627, 628, 75 N.Y.S.2d 73, appeal dismissed, 273 App.Div. 827, 76 N.Y.S.2d 537
(1947); B-OK, Inc. v. Storey, 79 Wash.2d 387, 389, 485 P.2d (1971); Crane Bromberg, Partnership, pp. 451-53 (1968).
The first issue is relatively simple and is essentially a question of fact. Whether the parties to a partnership dissolve their partnership and whether the partnership obligations are assumed are matters of the intent of the parties. Munn v. Scalera, supra 530. In the case at bar, it is clear that the defendant and the plaintiffs had decided to go separate ways. This is supported by the defendant, Luis Amaral, transferring his rights and liabilities to Anthony J. Spak, III. The defendants consented CT Page 5990 to this transfer on November 13, 1987 when they had organized themselves into a corporation, Lead Pack Sports, Ltd., with the nature and purpose being to conduct any business for which a corporation may be formed and legally function in the State of Connecticut, including the operation of a sporting goods retail store.
This corporation was formed to replace the partnership business operating under the name Lead Pack Running and Athletic Equipment. The incorporators were Miguel Angel Castillo, Bruce Roland Snyder and Anthony J. Spak, III. The interest and the liability for Lead Pack was limited by the prior agreement. The Partnership was dissolved by agreement as the remaining two partners proceeded to continue the business.
In addition, on November 6, 1988, Bruce R. Snyder wrote to Attorney John Shearman, the Agent for Service for Lead Pack Sports, Ltd., that he approved of the purchase by Anthony Spak of Luis Amaral's share in Lead Pack Sports. Mr. Snyder further instructed that any adjustments be made on the Lead Pack Sports corporate record to reflect this change. At this time, Mr. Amaral was not listed on the corporate records and this letter clearly shows the acceptance of the transfer of any partnership liability. Moreover, on November 22, 1988, to complete the transfer of liability, Mr. Anthony Spak, III, signed a guaranty by Individual to Connecticut National Bank concerning loans made to Lead Pack Sports, Inc.
Thus, Connecticut National Bank, the bank providing the funding in this situation, was fully aware of the transfer of personal liability from Luis Amaral to Anthony Spak, III. Connecticut National Bank consented to a material alteration in the nature of the obligations owed to them by accepting Anthony Spak's personal guaranty on the loans to Lead Pack Sports in lieu of Luis Amaral. The bank was aware of this transfer of liability and they through their course of dealing between themselves and the continuing business accepted this transfer.
The underlying obligation upon which the plaintiffs are basing their action concerns the agreement between the creditor, Connecticut National Bank and the partnership. However, the partnership rights of Luis Amaral were transferred to Anthony Spak, III, thereby terminating Luis Amaral's liability. The creditor, Connecticut National Bank, accepted the transfer of liability and subsequently upon default on the loans, action was not brought against Mr. Amaral due to the accepted transfer. The Bank also agreed to a change in form as the partnership became a corporation and the bank accepted Anthony Spak, III as the new guarantor on the notes. This change related to the obligations of payment required by the plaintiffs. The variation related to the release CT Page 5991 of Mr. Amaral's liability and the subsequent substitution of Anthony Spak as a guarantor. An agreement was signed on January 20, 1989, between Anthony Spak, III, and Luis Amaral after the transfer was accepted by both the bank and the plaintiff formalizing the transfer of personal liability to Anthony Spak, III, from Luis Amaral.
The plaintiffs also contend that the defendant is liable for his share under the theory of common law contribution. In support of this theory the plaintiffs rely on MacArthur v. Cannon, 4 Conn. Cir. 208 (1967), which is, however, distinguishable from the case at bar.
In MacArthur v. Cannon, supra, the court held that when several parties are equally liable for a debt and one is compelled to pay the whole of it, he may have contribution from the others to obtain from them the payment of their respective shares. Id., at 215. There was no transfer of personal liability to a third party, nor was there a guaranty by a third party. in MacArthur v. Cannon, supra.
In the case at bar, however, the underlying obligation upon which the plaintiffs are basing their action concerns the agreement between the creditor, CNB and the partnership. The partnership rights of the defendant were transferred to Anthony Spak, III, thereby terminating the defendant's liability.
Accordingly, for the foregoing reasons, the defendant is not liable to the plaintiffs for his alleged 22 percent share.
GILL, J.